IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **DENISE LUKASAVAGE,**<br><br>    **PLAINTIFF**<br>  v.<br><br>**TD BANK, N.A.,**<br><br>    **DEFENDANT.** | Civil Action No.: _____<br><br>**JURY TRIAL DEMANDED** |

**COMPLAINT AND JURY DEMAND**

Plaintiff Denise Lukasavage, by and through her undersigned attorneys, Bell & Bell LLP, hereby files the following Complaint and Jury Demand ("Complaint").

**PRELIMINARY STATEMENT**

1. This is an action for an award of damages and other relief on behalf of Plaintiff Denise Lukasavage (hereinafter "Plaintiff" or "Ms. Lukasavage"), a former employee of TD Bank, N.A. (hereinafter "TD Bank"). Despite her loyalty and consistent performance, Ms. Lukasavage was subjected to the Defendant's discrimination and harassment on the basis of her disability and/or perceived disability, was retaliated against for seeking accommodations for her disability and/or perceived disability, and was unlawfully terminated as a result of the discrimination and retaliation.

2. This action arises under the American with Disabilities Act, 42 U.S.C. § 12101, et seq. ("ADA") and the Family and Medical Leave Act, 29 U.S.C. § 2611, et seq. ("FMLA").

**JURISDICTIONAL STATEMENT**

3. This Court has original jurisdiction over all civil actions arising under the Constitution, laws or treaties of the United States pursuant to 29 U.S.C. §§ 1331 and 1391.

4. The jurisdiction of this Court is also invoked pursuant to 28 U.S.C. § 1343(4), which grants the District Court original jurisdiction in any civil action authorized by law to be commenced by any person to recover damages to secure equitable or other relief under any act of Congress providing for the protection of civil rights.

5. This Court has supplemental jurisdiction over any Pennsylvania state law claims pursuant to 28 U.S.C. § 1367.

6. All conditions precedent to the institution of this suit have been fulfilled. On August 6, 2020, Plaintiff timely filed a Charge of Discrimination with the United States Equal Employment Opportunity Commission ("EEOC"), which was dual-filed as a Complaint with the Pennsylvania Human Relations Commission ("PHRC"). On December 22, 2020, the EEOC issued a Notice of Right to Sue to Plaintiff. This action has been filed within ninety (90) days of Plaintiff's receipt of said Notice.[1]

## VENUE

7. This action properly lies in the Eastern District of Pennsylvania, pursuant to 28 U.S.C. § 1391(b).

8. This action properly lies in the Eastern District of Pennsylvania because the claims and significant activities associated with those claims arose in this judicial district, and Plaintiff was employed and terminated by Defendant in this judicial district.

---

[1] It has been less than one year since Ms. Lukasavage dual-filed her Charge of Discrimination as a Complaint with the Pennsylvania Human Relations Commission for Defendant's violations of the Pennsylvania Human Relations Act, 43 P.S. § 951, et seq. ("PHRA"). Ms. Lukasavage will seek to amend her Complaint in this matter to add her PHRA claims once she has exhausted her administrative remedy with respect to those claims.

## PARTIES

9. Plaintiff Denise Lukasavage is an adult female citizen and resident of Horsham, Pennsylvania and the United States of America.

10. Ms. Lukasavage is a qualified individual with a disability within the meaning of the ADA.

11. Ms. Lukasavage suffers from post-traumatic stress disorder and acute stress.

12. Ms. Lukasavage's disability affects a major bodily function and substantially limits one or more major life activities.

13. Ms. Lukasavage's disability has affected her for a period far in excess of six months.

14. Defendant is a TD Bank is a national bank organized under the laws of the United States with thousands of locations throughout the Northeast, Mid-Atlantic, Metro D.C., the Carolinas, and Florida, including the location at 2520 Grant Avenue, Philadelphia, Pennsylvania 19114, where Plaintiff was employed.

15. At all relevant times, Defendant is and has been an employer employing more than five-hundred (500) employees.

16. At all relevant times, employees of Defendant acted as agents and servants for Defendant.

17. At all relevant times, employees of Defendant were acting within the scope of their authority and in the course of their employment under the direct control of Defendant.

18. At all times material hereto, Defendant acted by and through its authorized agents, servants, workmen and/or employees acting within the course and scope of their employment with Defendant and in furtherance of Defendant's business.

19. At all relevant times hereto, Plaintiff Denise Lukasavage was an "employee" of Defendant within the meanings of the laws at issue in this suit and is accordingly entitled to the protection of said laws.

20. At all relevant times hereto, Defendant was an "employer" and/or "person" under the laws at issue in this matter and is accordingly subject to the provisions of said laws.

21. During her employment, Defendant regarded Ms. Lukasavage as disabled.

22. This cause of action arose out of transactions or occurrences that took place in whole or in part in Philadelphia, Pennsylvania.

23. Defendant conducts substantial business within Philadelphia, Pennsylvania.

24. This Honorable Court has personal jurisdiction over the Defendant.

## FACTS

25. Ms. Lukasavage was formerly employed as Sales and Service Manager for TD Bank at its location at 2520 Grant Ave., Philadelphia, PA 19114.

26. Although Ms. Lukasavage began her employment at a Commerce Bank as an Assistant Branch Manager in May 2001, she became a TD Bank employee when TD Bank thereafter acquitted Commerce Bank.

27. Ms. Lukasavage was a dedicated and loyal employee for almost nineteen (19) years, from her hire in June 2001 until her termination on February 10, 2020.

28. Despite her dedication to the job, and consistently excellent performance, Ms. Lukasavage was subjected to discrimination and harassment on the basis of her disability or perceived disability, and was wrongfully terminated as a further result of discrimination and in retaliation for seeking accommodation of her disability in the form of leave pursuant to the FMLA.

29. Specifically, immediately upon returning from medical leave, Ms. Lukasavage was, for the first time in her employment with TD Bank, subjected to repeated disciplinary action, harassment, ostracization, and to false and/or unsubstantiated accusations.

30. Only a few short months after returning from medical leave, Ms. Lukasavage was terminated under highly suspect circumstances.

31. Ms. Lukasavage has over thirty (30) years of experience in banking, nineteen (19) of which she had devoted to TD Bank and its predecessor, without incident.

32. Due to her lengthy tenure and excellent performance, Ms. Lukasavage had risen to the position of Store Sales and Service Manager for TD Bank, the second-in-command position at her store.

33. Prior to November 7, 2019, Ms. Lukasavage had not been disciplined, and had consistently received positive performance reviews.

34. Notably, Ms. Lukasavage's last yearly Performance Feedback and Assessment (for fiscal year-end October 31, 2019) rated Ms. Lukasavage's performance "Quality Solid."

35. Robert Brumbach, then Store Manager, also reported that: "Denise hit her SR [sales revenue] goal and LEI [Legendary Experience Index] goal each quarter this year."

36. In fact, not only did Ms. Lukasavage "hit" her goals for sales revenue, she exceeded them, with the following scores for each quarter:

- 1st Quarter 138.7%,
- 2nd Quarter 179%,
- 3rd Quarter 115.3%, and
- 4th Quarter 119.9%.

37. Mr. Brumbach also reported: "[Ms. Lukasavage] is passionate about customer service and is reliable for her shifts. She pitches in at the teller line when needed and can do anything the branch asks of her."

38. Mr. Brumbach further noted his plans to have Ms. Lukasavage take on a bigger role in TD Bank, stating: "I would like to see Denise take the next step from Top performing banker, to more of a leadership and coaching role."

39. Mr. Brumbach also stated: "Overall Denise is a crucial part of our success at [sic] Roosevelt store, and I am looking forward to a great 2020 with her.".

40. In June 2019, suffering from post-traumatic stress disorder ("PTSD") and acute stress, Ms. Lukasavage took leave pursuant to the Family and Medical Leave Act.

41. Around the same time and/or shortly after Ms. Lukasavage's medical leave, TD Bank reorganized its stores, such that Regional Market Manager Anne Marie Carollo became the Regional Market Manager.

42. Ms. Lukasavage returned to work in October of 2019, and was almost immediately targeted as a result of discrimination on the basis of her disability or perceived disability, harassment and retaliation for seeking accommodation in the form of FMLA leave.

43. Upon her return, Ms. Lukasavage was treated differently than the other employees, and differently than she had been treated prior to taking medical leave for her disability.

44. Ms. Lukasavage was repeatedly subjected to disciplinary action, criticized and ostracized.

45. For example, despite her above-mentioned outstanding performance review for the October 31, 2019 year end, on November 7, 2019, Ms. Lukasavage was put on a formal, written "Coaching Action Plan" (hereinafter "the Plan"), which stated in boilerplate

fashion: "You are being placed on this Coaching Action Plan because there is a concern or decline in your performance . . .."

46. It is unclear how Ms. Lukasavage's performance could have declined to a point requiring this type of disciplinary action in the seven (7) days following her exemplary October 31st year-end review.

47. The purported purpose of the Plan was "[t]o address inconsistency in leadership execution in the areas of Overall Leadership, Delivering a Legendary Experience and Sales Execution."

48. The timing, circumstances and alleged reasons for such disciplinary action are highly suspect.

49. Prior to taking medical leave Ms. Lukasavage had never received any indication of such alleged issues with her job performance.

50. Further, the alleged reasons necessitating the Plan directly contradict the above-mentioned October 31, 2019 Performance Assessment Feedback.

51. Such assessment clearly stated that Ms. Lukasavage was a "[t]op performing banker," had met and/or exceeded her job requirements, and would now take on leadership roles.

52. The 2019 assessment further clearly evidenced that she had met her legendary experience index and exceeded sales revenue goals each quarter, as above indicated.

53. It is unclear then, why her performance in these exact areas would require disciplinary/corrective action.

54. Despite being confused and blindsided by this turn of events, Ms. Lukasavage cooperated and followed the Plan.

55. Mr. Brumbach noted Ms. Lukasavage's compliance on November 14th, reporting in writing: "Denise was responsive to coaching session."

56. On December 19, 2019, Ms. Lukasavage was issued a "Written Warning" – the first she had ever received in her tenure with Respondent.

57. Again, the timing and circumstances of the warning were highly suspect.

58. Such warning was issued at the direction of Manager Ann Marie Carollo and HR Advice Partner Jennifer Lawyer.

59. The warning alleged that on December 7, 2019, Ms. Lukasavage failed to adhere to "dual control" procedures by failing to secure combinations after using same to complete month-end audits, by leaving them unsecured in a drawer.

60. It was not Ms. Lukasavage's habit to leave combinations unsecured after use, nor did she have any recollection of doing so.

61. Neither Ms. Carollo nor Ms. Murphy-Kauffman provided any evidence or proof to support their claim that it was Ms. Lukasavage who left the combinations out.

62. Further, the combinations were not discovered until approximately ten (10) days after Ms. Lukasavage last used them, which was on or about November 27, 2019.

63. The timeline of events is that: the combinations were used by Ms. Lukasavage on or about November 27, 2019; they were discovered in a drawer ten (10) days later, on December 7, 2019; and Respondent waited for twelve (12) days to confront Ms. Lukasavage with their alleged discovery, on December 19, 2019.

64. Mr. Brumbach defended Ms. Lukasavage, specifically informing Ms. Carollo and Ms. Murphy-Kauffman that multiple people were in the vault from the time that Ms. Lukasavage had allegedly done it until the time that it was discovered, including the

person that reported to Ms. Carollo, and therefore it was more than likely that the combinations had been left out by someone else.

65. Despite this rationale explanation, TD Bank refused to consider this possibility.

66. Even though this information clearly indicated that it was not Ms. Lukasavage who left the combinations out, it was simply ignored.

67. Even more tellingly, retrieving the combinations for any purpose is a task for two individuals, but while Ms. Lukasavage was issued a written warning, the person she entered with was not reprimanded or subjected any discipline.

68. These facts suggest that Ms. Carollo and Ms. Murphy-Kauffman had a premeditated plan to falsely blame Ms. Lukasavage for the incident.

69. Notably, at some point during this same time-period, Ms. Corallo had also instructed Mr. Brumbach to lie and to falsely accuse Ms. Lukasavage of inappropriately leaving debit cards unsecured.

70. Mr. Brumbach refused to do so, as he knew it to be false, and instead called Human Resources and filed an Ethics Violation complaint against Ms. Carollo.

71. Shortly after this time, due to her discriminatory animus against Ms. Lukasavage, Ms. Carollo transferred the fair and impartial Mr. Brumbach and replaced him with her allies in order to make Ms. Lukasavage's time at TD Bank extremely difficult, stressful and strained – in sum, a hostile work environment.

72. Ms. Lukasavage was thus criticized frequently by Ms. Carollo and her allies, including by Karen Kranefeld, VP, Regional Operations Officer, who insisted that Ms. Lukasavage was performing wires wrong, despite the fact that Ms. Lukasavage was following the same bank policy and procedure she had correctly implemented for at least a year.

73. Ms. Lukasavage was also subject to constant criticism and unprofessional remarks, and a generally hostile work environment by Manager Margaret Murphy-Kaufman.

74. Ms. Murphy-Kaufman also loudly reprimanded Ms. Lukasavage in front of the other employees, including in front of Ms. Kranefeld.

75. Additionally, Ms. Murphy-Kaufman instructed Ms. Lukasavage to speak with an assistant manager of another branch, Jaime Quinn, for guidance regarding areas that Ms. Lukasavage allegedly needed to improve upon.

76. Ms. Lukasavage tried repeatedly to comply with this instruction, asking Ms. Murphy-Kaufman several times to help her block out time in her busy work schedule to meet with Ms. Quinn, but her requests were ignored.

77. During this time, Ms. Lukasavage was also being shut out of meetings in which, as a manager, she should have been, and previously had been, included.

78. Specifically, on December 19, 2019, Ms. Lukasavage was dismayed when she witnessed a managerial interview with a potential new hire, conducted by Ms. Murphy-Kaufman, take place right in front of her desk.

79. Ms. Lukasavage was not given the opportunity to speak with the candidate or, at a minimum, even be introduced as one of the branch managers.

80. On or about February 6, 2020, Ms. Lukasavage alerted Ms. Murphy-Kaufman that there had been a security incident that morning.

81. Ms. Murphy-Kaufman in turn accused Ms. Lukasavage of an unrelated matter, claiming that Ms. Lukasavage had left unsecured items in her desk.

82. This was the first time that Ms. Lukasavage had heard such allegations.

83. Thus, despite having known about the purported issue for some time, Ms. Murphy-Kaufman had waited to bring this alleged mistake to Ms. Lukasavage's attention.

84. Murphy-Kaufman then briefly handed Ms. Lukasavage the folder that Ms. Lukasavage routinely used for Beneficial Ownership Forms, ostensibly containing evidence of said allegation; however, upon looking in the folder, Ms. Lukasavage discovered that it contained signature cards belonging to *another employee*, meaning that it was <u>not</u> something that would have been in Ms. Lukasavage's desk.

85. Before Ms. Lukasavage had a chance to further view the "evidence," Ms. Murphy-Kaufman demanded that Ms. Lukasavage give the folder back and ripped it from Ms. Lukasavage's hand.

86. Ms. Lukasavage maintains that at no point did she have possession of the *other employee's* signature cards contained in the folder, and has no knowledge of how they came to be in her drawer, if in fact they were even found there.

87. On February 10, 2020, approximately four (4) days after being accused of leaving another employee's signature cards in her desk, in a final act of discrimination and retaliation, Respondent terminated Ms. Lukasavage's employment, ostensibly based upon the unfounded accusations.

88. These facts strongly suggest that Ms. Carollo and Ms. Murphy-Kauffman held a discriminatory animus against Ms. Luksavage and sought to create such a terrible and hostile working environment sufficient to make Ms. Lukasavage quit, or create a false paper trail of alleged "issues" sufficient to justify her termination.

89. The timing of Ms. Lukasavage's termination, which occurred shortly after her return from FMLA leave, coupled with TD Bank's egregious discriminatory and harassing acts

towards Ms. Lukasavage immediately upon her return from FMLA leave, and TD Bank's false and invented grounds for her termination, indicates that Ms. Lukasavage's termination was the result of discrimination on the basis of her disability and in retaliation for seeking accommodations for her disability, including seeking or taking FMLA leave.

90. Given her exemplary work performance during her employment with TD Bank, TD Bank's treatment of Ms. Lukasavage after her requests for accommodation, and the circumstances surrounding her termination, Ms. Lukasavage maintains that she was discriminated against and harassed on the basis of her disability and/or perceived disability, was subjected to retaliation for her requests for accommodations, including retaliation for seeking or taking FMLA leave, and was terminated as a result of such discrimination and retaliation.

91. Based on the forgoing, Ms. Lukasavage was discriminated against and harassed on the basis of her disability or perceived disability, was retaliated against for seeking accommodation of her disability in the form of medical leave, retaliated against for seeking or taking FMLA leave, and was terminated as a result of discrimination and retaliation, in violation of the ADA and FMLA.

92. Ms. Lukasavage has suffered financial losses, which include, among other things, lost wages, medical expenses, and an obligation for attorneys' fees and costs of bringing suit, as a direct and proximate result of the actions and inactions of Defendant.

93. Ms. Lukasavage has suffered mental anguish and severe emotional distress as a direct and proximate result of the actions and inactions of Defendant.

94. Defendant and its agents acted with the intent of causing or with reckless disregard for the probability that their actions would cause Ms. Lukasavage severe emotional distress.

## COUNT I
### The Americans with Disabilities Act, 42 U.S.C. § 12101, et seq.

95. Plaintiff Denise Lukasavage repeats and incorporates by reference the allegations of all preceding paragraphs as if fully set forth at length herein.

96. Based on the foregoing, Defendant TD Bank engaged in unlawful employment practices in violation of the Americans with Disabilities Act.

97. In discriminating against and harassing Ms. Lukasavage on the basis of her disability and/or because Defendant regarded Ms. Lukasavage as disabled, and in retaliating against Ms. Lukasavage for seeking accommodations, Defendant violated the ADA.

98. Said violations were intentional and willful.

99. Said violations warrant the imposition of punitive damages.

100. As the direct and proximate result of Defendant's violations of the Americans with Disabilities Act, Plaintiff Denise Lukasavage has sustained loss of earnings, severe emotional and psychological distress, loss of self-esteem, loss of future earning power, as well as back pay, front pay, and interest due thereon, and has incurred attorneys' fees and costs.

## COUNT II
### The Family and Medical Leave Act, 29 U.S.C. § 2611, et seq.

101. Plaintiff Denise Lukasavage repeats and incorporates by reference the allegations of all previous paragraphs as fully as though the same were set forth at length herein.

102. Defendant's conduct, in retaliating against Plaintiff for taking or seeking to take leave pursuant to the Family and Medical Leave Act, violated the FMLA.

103. Defendant's violations of the FMLA were intentional and willful as TD Bank knew or should have known of the requirements of the FMLA.

104. Said violations warrant the imposition of liquidated damages.

105. As a direct and proximate result of Defendant's violations of the FMLA, Plaintiff Denise Lukasavage has sustained a loss of earnings, severe emotional and psychological distress, loss of self-esteem, loss of future earning power, as well as back pay, front pay, and interest due thereon and has incurred attorneys' fees and costs.

## PRAYER FOR RELIEF

106. Plaintiff Denise Lukasavage repeats and incorporates by reference the allegations of all preceding paragraphs as if fully set forth at length herein.

**WHEREFORE**, Plaintiff Denise Lukasavage respectfully requests that this Court enter judgment in her favor and against TD Bank, N.A. and Order:

   a. Appropriate equitable relief, including reinstatement or front pay;

   b. Defendant to compensate Plaintiff with a rate of pay and other benefits and emoluments of employment to which she would have been entitled had she not been subjected to unlawful discrimination, harassment, retaliation, and wrongful termination;

   c. Defendant to compensate Plaintiff with the wages and other benefits and emoluments of employment lost because of Defendant's unlawful conduct;

   d. Defendant to pay Plaintiff punitive damages;

   e. Defendant to pay Plaintiff liquidated damages;

f. Defendant to pay Plaintiff compensatory damages for future pecuniary losses, pain and suffering, inconvenience, mental anguish, loss of employment and other nonpecuniary losses as allowable;

g. Defendant to pay Plaintiff's costs of bringing this action, including, but not limited to, Plaintiff's attorneys' fees;

h. Plaintiff be granted any and all other remedies available under the ADA and FMLA; and

i. Such other and further relief as this Court deems just and proper.

## JURY DEMAND

Plaintiff hereby demands trial by jury as to all issues so triable.

*/s/ Christopher A. Macey, Jr.*
Christopher A. Macey, Jr., Esquire
Bell & Bell LLP
One Penn Center
1617 JFK Blvd. – Suite 1254
Philadelphia, PA  19103

*Attorneys for Plaintiff Denise Lukasavage*

Dated: March 19, 2021